**BLANK ROME LLP**
A Pennsylvania LLP
STEPHEN M. ORLOFSKY
New Jersey Resident Partner
ANDREW J. HUGHES
301 Carnegie Center
Princeton, NJ 08540
Telephone: 609-750-7700
Facsimile:  609-750-7701

**KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP**
DALE KINSELLA (Admitted *Pro Hac*)
JEREMIAH REYNOLDS (Admitted *Pro Hac*)
808 Wilshire Blvd., 3rd Floor
Santa Monica, California 90401
Telephone:  310-566-9800
Facsimile:  310-566-9850

Attorneys for Plaintiff, Laura Sperber

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURA SPERBER, an individual,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>PAUL ELWELL, an individual; and DOES 1-10,<br>　　　　　Defendants. | HONORABLE ANNE E. THOMPSON<br><br>Civil Action No.: 3:13-cv-00768-AET-LHG<br><br>**Motion Date:  June 3, 2013**<br><br>**(Filed Electronically)** |

**PLAINTIFF LAURA SPERBER'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION**
<u>**TO DISMISS DUE TO LACK OF JURISDICTION**</u>

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................................1

II.   STATEMENT OF FACTS ..............................................................................................2

    A.   Sperber's Businesses Are Located In New Jersey. ..............................................2

    B.   The Ripoff Report Regarding Sperber And Defamatory Emails Concerning The Report. .........................................................................................................3

    C.   Sperber Determines That Elwell Is Responsible For The Defamatory Postings. ...............................................................................................................4

III.  LEGAL ARGUMENT.....................................................................................................6

    A.   Defendant Has Not Submitted Any Facts Supporting his Motion to Dismiss.........6

    B.   Jurisdiction is Proper Under the *Calder* Effects Test. ............................................6

        1.   The First And Second Prongs Of The IMO Test Are Easily Satisfied. .......8

        2.   Elwell Intended To Cause Injuries In New Jersey.....................................9

    C.   Venue is Proper in New Jersey Because Sperber Suffered Her Injuries in New Jersey. ...............................................................................................................12

    D.   Elwell's Argument that the Complaint Fails to Plead Compensatory Damages is Improper and Should be Disregarded.................................................14

IV.   CONCLUSION..............................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aetna Life Ins. Co. v. Alla Med. Services, Inc.*,
  855 F.2d 1470 (9th Cir. 1988) ...................................................................................1

*Bates v. C & S Adjusters, Inc.*,
  980 F.2d 865 (2d Cir. 1992)......................................................................................12

*Calder v. Jones*,
  465 U.S. 783 (1984)..................................................................................6, 7, 8, 10

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*,
  618 F.3d 1153 (10th Cir. 2010) .................................................................................12

*Franklin Prescriptions, Inc. v. The New York Times Co.*,
  267 F. Supp. 2d 425 (E.D. Pa. 2003) ......................................................................8, 9

*General Elec. Co. v. Deutz Ag.*,
  270 F.3d 144 (3d Cir. 2001)........................................................................................6

*Gould Electronics Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000).......................................................................................14

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005).......................................................................................12

*IMO Industries, Inc. v. Kiekert AG*,
  155 F.3d 254 (3rd Cir. 1998) ..........................................................................7, 8, 9, 12

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)............................................8

*Lacey v. Cessna Aircraft Co.*,
  862 F.3d 38 (3d. Cir. 1988)........................................................................................13

*Leone v. Cataldo*,
  574 F. Supp. 2d 471 (E.D. Pa. 2008) ........................................................................13

*Metcalfe v. Renaissance Marine, Inc.*,
  566 F.3d 324 (3d Cir. 2009).......................................................................................6

*Miller Yacht Sales, Inc. v. Smith*,
  384 F.3d 93 (3d Cir. 2004).........................................................................................6

*Nat'l Micrographics Systems, Inc. v. Canon U.S.A., Inc.*,
  825 F. Supp. 671 (D.N.J. 1993) ................................................................................12

*Pecoraro v. Sky Ranch for Boys, Inc.*,
    340 F.3d 558 (8th Cir. 2003) ..............................................................................................12

*Piecknick v. Pennsylvania*,
    36 F.3d 1250 (3d Cir. 1994)................................................................................................10

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)............................................................................................................13

*Print Data Corp. v. Morse Fin., Inc.*,
    2002 WL 1625412 (D.N.J. 2002) .......................................................................................13

*Sanford Airport Auth. v. ACI Constr. Servs., Inc.*,
    2008 WL 113776 (M.D. Fla. 2008) ....................................................................................13

*Stevens v. Meaut*,
    264 F. Supp. 2d 226 (E.D. Pa. 2003) ..............................................................................9, 10

**STATUTES**

28 U.S.C. § 1391(b)(2) .................................................................................................................12

N.J.S.A. 2C:21-17.a .......................................................................................................................9

**OTHER AUTHORITIES**

Fed.R.Civ.P. 4(e) ............................................................................................................................6

Fed. R. Civ. P. 8(b)(6)....................................................................................................................5

Fed. R. Civ. P. 12(b) .................................................................................................................1, 14

N.J. Court Rule 4:4-4(c).................................................................................................................6

Restatement (Second) Conflict of Laws § 150(2) (1971) ..............................................................9

I.        **INTRODUCTION**

After maliciously attempting to destroy Plaintiff Laura Sperber's ("Sperber") name, reputation and ability to earn an income, Defendant Paul Elwell has filed an untimely motion to dismiss, arguing it is improper and unfair for the Court to exercise personal jurisdiction over him in the very state where he specifically intended to cause Sperber to suffer injuries.[1]  The motion should be denied.

In determining whether personal jurisdiction is appropriate, it is critical that the Court take into account that (1) the underlying transactions that apparently motivated Elwell's anger towards Sperber originated out of Elwell voluntarily transacting business with Sperber's companies in New Jersey; (2) the nature of the false allegations that Elwell made against Sperber make clear that Elwell intended to specifically cause injury to Sperber's reputation in New Jersey; (3) Elwell intentionally misappropriated Sperber's intellectual property in New Jersey in order to impersonate Sperber and to give credibility to his false allegations against her; and (4) Elwell's actions were intentionally aimed at destroying Sperber's businesses located in New Jersey.

Accordingly, the Court's exercise of jurisdiction over Elwell is proper and the motion should be denied.  If the Court is nonetheless inclined to grant the motion (which it should not), then this case should be transferred to the United States District Court for the Western District of Michigan because Elwell admits that jurisdiction and venue are proper in that Court.

---

[1] A motion based upon any of the grounds in Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b); *see Aetna Life Ins. Co. v. Alla Med. Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988).  Elwell filed his answer to the complaint on March 1, 2013.

## II.    STATEMENT OF FACTS

### A.    Sperber's Businesses Are Located In New Jersey.

Sperber is a resident of New Jersey, County of Monmouth, and has been a resident of New Jersey at all relevant times for at least the past 25 years. (Declaration of Laura Sperber, ¶ 2.) Sperber is the President and owner of Legend Numismatics ("Legend"). (Sperber Decl., ¶ 3.) Legend is located in Lincroft, New Jersey. (*Id.*) Legend is one of the premiere high-end rare coin dealers in the United States. (*Id.*) Sperber specializes in locating, procuring and selling top quality, high value rare coins. (*Id.*) The majority of Sperber's business is conducted out of her office in New Jersey. (*Id.*) Sperber has been involved in handling some of the largest rare coin transactions in the United States. (*Id.*) For example, Legend recently represented a buyer who purchased a rare 18th century coin for $10,016,875, the highest amount ever paid for a rare coin. (*Id.*)

Sperber is also a co-owner of CAC, which is located in Far Hills, New Jersey. (Sperber Decl., ¶ 4.) CAC is an independent numismatic coin grading service. (*Id.*) Grading is a way of independently certifying a coin's physical condition. (*Id.*) Collectors submit coins to CAC, and CAC provides them a grade that is represented by a verification sticker affixed to the coin's case. (*Id.*) CAC's mission is to give coin collectors confidence in the quality of the coins they are buying and selling. (*Id.*)

Sperber's reputation is critical to her ability to transact business in the world of coin collecting. (Sperber Decl., ¶ 5.) Since 1987, she has worked to establish her good name and reputation among the relatively small world of individuals involved in collecting high-end coins. (*Id.*) These types of collectors want to ensure that the coins they are purchasing or selling are genuine and authentic. (*Id.*) They also want to ensure that they will actually receive the proceeds of the coins they are selling or receive the coins they are purchasing. (*Id.*) Thus, they place a large

amount of trust in Sperber and her business. (*Id.*) Any suggestion that Sperber has been involved in fraudulent or criminal activity is devastating to her reputation and ability to continue doing business as a coin dealer. (*Id.*)

### B. The Ripoff Report Regarding Sperber And Defamatory Emails Concerning The Report.

On September 24, 2012, an anonymous user posted the following "report" about Sperber on a website called Ripoff Report (http://www.ripoffreport.com/laura-sperber-of-leg/computer-fraud/internet-internet-03130.htm):

> Laura Sperber from Legend Numismatics was indicted on charges of racketeering and money laundering on Monday. A grand jury handed down the indictment Monday afternoon. This capped a year long investigation in to her alleged criminal activity helping many well-known organized crime family launder money through the front of coin collecting. She is a well known loud mouthed PCGS coin dealer.

(Sperber Decl., ¶ 6; Complaint, ¶ 11.)

This "report" is completely false. (Sperber Decl., ¶ 7.) Sperber has never been indicted of racketeering and money laundering by a grand jury. (*Id.*) Sperber has never been investigated for "helping many well-known organized crime family launder money through the front of coin collecting." (*Id.*)

On October 3, 2012, a user impersonating Sperber posted a response to the September 24, 2012 "report" stating the following:

> This is Laura Sperber of Legend Coins. We sell only PCGS /CAC coins and only the highest quality. Some people are reported i was a under investigation. This is not true these charges of money laundering were dismissed by a judge three years

ago.  I only sell the best quality coin PCGS and CAC only and have not been convicted recently of any crimes.  This is old news and i won the case!!!

The October 3, 2012 post is accompanied by a photo of Sperber.  Sperber owns the copyright to the photo.  (Sperber Decl., ¶ 8; Complaint, ¶ 13, 19.)

On October 5, 2012, the same user impersonating Sperber submitted a second post on Ripoff Report stating the following: "I am posting documents this week showing that all criminal charges were settled via plea bargin [sic].  I was never found guilty."  (Sperber Decl., ¶ 9.)

Sperber also learned that an anonymous individual sent numerous emails to her peers and customers in the coin collecting business on October 12, 2012, in which the individual provided a link to the defamatory Ripoff Report about Sperber and asked, "I saw this article written online about Laura Sperber is it true?."  (Sperber Decl., ¶ 11; Complaint, ¶ 31.)

The defamatory Ripoff Report and subsequent emails linking to the report have substantially damaged Sperber's reputation.  (Sperber Decl., ¶ 12.)  The defamatory report about Sperber on Ripoff Report is still freely available on the Internet.  (*Id.*)  Indeed, if you perform a Google search of Sperber's name and the word "coins," the defamatory Ripoff report appears as the second hit in the list of results.  (*Id.*)  Since October 2012, Sperber has noticed a decrease in the amount of sales and business transactions handled by her and her business Legend.  (*Id.*)  Sperber believes she can demonstrate that the defamatory report about her is a substantial factor in the decrease in sales and business transactions.  (*Id.*)

### C. **Sperber Determines That Elwell Is Responsible For The Defamatory Postings.**

Sperber has determined through her investigation that the individual responsible for publishing the defamatory "report" about Sperber is Defendant Paul Elwell ("Elwell"). (Complaint, ¶ 16, 31.)  Sperber has further determined that Elwell falsely impersonated her in the posts that were supposedly written by Sperber, and was responsible for posting the copyrighted

photo of Sperber on the website. (*Id.*) Sperber alleges claims against Elwell for Copyright Infringement, Trademark Infringement, and Libel Per Se.

Elwell does not deny in his Answer to Sperber's Complaint that he is responsible for the defamatory posts, the impersonation of Sperber in the comments, and the defamatory emails.[2] Instead, he asserts his actions did not rise to the level of "civil false impersonation" and "criminal false impersonation," and asserts his "Fifth Amendment Privilege." (*See* Answer, ¶ 16.) Elwell asserts a number of defenses, including that the defamatory postings are entitled to First Amendment protection, and the copyright infringement of Sperber's photo is a "fair use." (*See, e.g.,* Answer ¶¶ 1-16.)

Sperber has served written discovery requests on Elwell that are relevant to the issues raised by the instant Motion. (*See* Declaration of Jeremiah Reynolds, ¶¶ 3-4, submitted herewith.) However, Elwell has simply failed to respond to the written discovery, claiming on May 17, 2013 that "I have not received any actual discovery requests yet." (*Id.*, ¶ 5.) Elwell's assertion that he did not receive the written discovery is false. Sperber's counsel served written discovery on Elwell via regular mail, but also served a courtesy copy of the discovery to Elwell via email. (*Id.*) <u>Elwell responded to counsel for Sperber's email attaching the written discovery</u>, claiming that Sperber did not have a right to conduct discovery until a joint discovery plan was submitted to the Court. (*Id.*) Sperber's counsel responded to Elwell's email noting the he was incorrect that Sperber is prevented from serving discovery prior to submission of a joint discovery plan. (*Id.*)

---

[2] The failure to deny these accusations constitutes admissions under Rule 8(b)(6) of the Federal Rules of Civil Procedure.

### III.     LEGAL ARGUMENT

#### A.     Defendant Has Not Submitted Any Facts Supporting his Motion to Dismiss.

When a court does not hold an evidentiary hearing on personal jurisdiction, a plaintiff "need only establish a *prima facie* case of personal jurisdiction."  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  "Moreover, '[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff.'" *Id.* (*quoting Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)).

As discussed below, although the Court must accept Sperber's allegations in her Complaint as true, Sperber has also submitted a sworn declaration establishing why the Court can properly exercise personal jurisdiction over Elwell.  Elwell's motion to dismiss references a declaration purportedly submitted by Elwell, but no such declaration was filed with the Court or served on counsel for Sperber.  Accordingly, the Court should disregard any factual assertions made in the motion to dismiss.

#### B.     Jurisdiction is Proper Under the *Calder* Effects Test.

A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey's long-arm statute.  *See* Fed.R.Civ.P. 4(e).  New Jersey's long-arm statute permits jurisdiction coextensive with the Due Process Clause of the United States Constitution. *See* N.J. Court Rule 4:4-4(c).  Thus, parties who have constitutionally sufficient "minimum contacts" with New Jersey are subject to suit there.  *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).

Jurisdiction is appropriate under the Due Process Clause where a plaintiff's claims are related to the defendant's activities in the forum state and the plaintiff's injuries are related to those activities.  *See General Elec. Co. v. Deutz Ag.*, 270 F.3d 144, 150 (3d Cir. 2001).

In cases involving intentional torts, plaintiffs must allege sufficient facts to establish personal jurisdiction under the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, actress Shirley Jones sued the National Enquirer, its reporter and editor-in-chief over an article claiming that Jones was an alcoholic. Jones sued in California, although the article was written and edited in Florida. The Supreme Court held that jurisdiction was proper in California because Jones's career was centered in California, and "the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788-89. Defendants knew "their intentional, and allegedly tortious actions, were expressly aimed at California." *Id.* at 789. Defendants "wrote and [] edited an article that they knew would have a potentially devastating impact upon respondent." *Id.*

The Court held that Defendants should have reasonably anticipated being haled into court in California. *Id.* Importantly, the Court noted that "[a]n individual injured in California need not go to Florida to seek redress from persons who, through remaining in Florida, knowingly cause the injury in California." *Id.* at 790.

In *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3rd Cir. 1998), the Third Circuit set forth three requirements for establishing jurisdiction under the *Calder* "effects test":

(1) The defendant committed an intentional tort;

(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and

(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

In *IMO Industries*, the court held that New Jersey did not have personal jurisdiction over a defendant German corporation because New Jersey was not the focal point of the dispute. The court stated that "[s]imply asserting that the defendant knew that the plaintiff's principal place of

business was located in the forum would be insufficient in itself . . . . The defendant must manifest behavior intentionally targeted at and focused on the forum for *Calder* to be satisfied." 155 F.3d at 265 (quotation omitted) (footnote omitted).  The court noted that "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266.

*IMO Industries* is readily distinguishable from the instant case because the defendant German corporation did not specifically intend to injure the in-forum plaintiff, but rather was aiming its conduct at a French company.  In contrast, New Jersey is the focus of this dispute because Elwell intended to cause injuries to Sperber specifically in the state of New Jersey, thereby satisfying the third prong of the *IMO Industries* test.   As will be discussed below, all three requirements of the *IMO Industries* test are easily satisfied in this case.

**1.      The First And Second Prongs Of The IMO Test Are Easily Satisfied.**

The first prong of the *IMO Industries* test is easily satisfied.  The allegations of the Complaint clearly state that Elwell committed an intentional tort against Sperber in the form of libel *per se*, copyright infringement, and trademark infringement.

Sperber also easily satisfies the second prong of the *IMO Industries* test – that Sperber bore the brunt of the harm in New Jersey.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (noting that harm from defamation is primarily felt in the states where they reside).  "The interest in reputation has been described as a 'valuable asset in one's business or profession.'" *Franklin Prescriptions, Inc. v. The New York Times Co.*, 267 F. Supp. 2d 425 (E.D. Pa. 2003) (*quoting Fitzpatrick v. Milky Way Prods., Inc.*, 537 F. Supp. 165, 171 (E.D. Pa. 1982)). "Therefore, it does not strain logic that 'the state of plaintiff's domicile generally has the greatest concern in vindicating plaintiff's good name and providing

compensation for harm caused by the defamatory publication.'" *Id.* "Moreover, when a person claims that the defamation occurred by an aggregate communication, i.e. across multiple states, 'the state of most significant relationship will usually be the state where the person was domiciled at the time . . . .'" *Id.* (*quoting* Restatement (Second) Conflict of Laws § 150(2) (1971)).

Sperber is a longtime New Jersey resident, who conducts the majority of her business in New Jersey. Both of her businesses are located in New Jersey. She has suffered the brunt of the damage to her reputation caused by Elwell in her home state of New Jersey. (*See* Sperber Decl., ¶¶ 2-4.)

Importantly, by impersonating Sperber, Elwell committed the crime of impersonation under New Jersey law. *See* N.J.S.A. 2C:21-17.a.(1) ("A person is guilty of an offense if the person: (1) Impersonates another or assumes a false identity and does an act in such assumed character or false identity . . . to injure or defraud another." (emphasis added)). Elwell's effort to impersonate Sperber certainly caused an "injury" to Sperber that is unique to New Jersey given its statute prohibiting impersonation.

### 2. Elwell Intended To Cause Injuries In New Jersey.

The third prong of the *IMO Industries* test is also satisfied because Sperber has presented *prima facie* evidence that Elwell intended to cause injuries to Sperber specifically in the state of New Jersey. The instant case is directly analogous to *Stevens v. Meaut*, 264 F. Supp. 2d 226 (E.D. Pa. 2003). In *Stevens*, the owners of a yacht brought an action in Pennsylvania against an out-of-state defendant for slandering their title to the yacht. The district court held that personal jurisdiction was proper over the defendant because the boat's owner submitted an affidavit stating that the financial transactions involving the yacht were handled in Pennsylvania, and that the defendant knew title to the yacht was held in Pennsylvania. *Id.* at 236-37. The affidavit further

attested that the defendant knew the plaintiffs would suffer injuries in Pennsylvania, and that plaintiffs actually suffered their financial losses in Pennsylvania. *Id.* at 237.

First, as in *Stevens*, the underlying transactions that appear to be the impetus for Elwell's actions against Sperber arise out of Elwell's voluntary financial transactions with Sperber's business, Legend, in New Jersey.[3] (Sperber Decl., ¶ 13, Exs. A & B.) In August 2011, Elwell purchased a rare coin from Legend, which is located in New Jersey. (*Id.*) On September 4, 2012, Elwell attempted to purchase another rare coin from Legend. (*Id.*) However, Legend was forced to cancel this transaction after Elwell failed to pay for the coin. (*Id.*) The first defamatory posting about Sperber appeared shortly after the September 4, 2012 transaction was cancelled. Since Sperber had no other known interactions with Elwell, it can reasonably be inferred that the defamatory postings against Sperber have their impetus in the financial transactions that Elwell directed towards Sperber's business in New Jersey.

Second, as in *Calder* and *Stevens*, it is evident that Elwell knew that Sperber was a New Jersey resident given his prior dealings with Legend, and he intended that any injuries occur in New Jersey. In his defamatory postings, Elwell made sure to specifically mention Sperber's companies, Legend and CAC, in order to damage their business operations in New Jersey. Elwell's September 24 defamatory "report" specifically identified "Laura Sperber <u>from Legend Numismatics</u>." (Emphasis added.) Elwell's October 3, 2012 post, in which he impersonated Sperber, again states that Sperber is "from Legend" and also twice mentions Sperber's connection with CAC. The clear intent was not only to impugn Sperber's name and reputation and damage

---

[3] While Elwell's exact motivation for attempting to destroy Sperber's reputation is not presently known given the early stages of this proceeding and given Elwell's failure to respond to written discovery, it is reasonable to infer that Elwell's motivation centered on the transactions with Sperber's company. *See Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994) (when considering a motion to dismiss, a court must draw all reasonable factual inferences in the light most favorable to the plaintiff).

her ability to conduct business as a coin dealer, but also target and injure her companies in New Jersey.

Third, the very nature of Elwell's accusations, when read as a whole and in context, makes clear that Elwell intended to cause injuries in New Jersey. The September 24 report states that Sperber was "indicted on charges of racketeering and money laundering on Monday" which "capped a year long investigation in to her alleged criminal activity helping many well-known organized crime family launder money through the front of coin collecting." Since Sperber conducts the majority of her business in New Jersey and her "coin collecting" businesses are located in New Jersey, a reasonable reader would understand that Sperber was both investigated and indicted in New Jersey.

Fourth, Elwell not only posted defamatory comments about Sperber, but also impersonated Sperber in replying to those same comments, with the intention of further humiliating Sperber and injuring her reputation and business in New Jersey, as well as providing credibility to his defamatory accusations. To impersonate Sperber, Elwell had to take voluntary steps to misappropriate Sperber's name and likeness, property rights that would be protected by the law of New Jersey.

Fifth, as explained previously, Sperber also learned that an anonymous individual sent numerous emails to her peers and customers in the coin collecting business on October 12, 2012, in which the individual provided a link to the defamatory Ripoff Report about Sperber and asked, "I saw this article written online about Laura Sperber is it true?." Elwell likely directed emails specifically to individuals in New Jersey linking to the defamatory report for the purpose of causing Sperber further damage in the State of New Jersey. (Reynolds Decl., ¶ 4.) However, Elwell has simply failed to respond to written discovery requesting copies of any emails that he sent linking to the defamatory report. (*Id.*, ¶ 5.) The Court should infer, based on Elwell's failure

to respond to discovery, that those emails would show that Elwell did send emails specifically to the State of New Jersey.

Accordingly, the third prong of the *IMO Industries* test is satisfied because Sperber has demonstrated a *prima facie* case that Elwell took specific actions to cause Sperber to suffer injuries in New Jersey.

### C. Venue is Proper in New Jersey Because Sperber Suffered Her Injuries in New Jersey.

Elwell also includes a brief argument in his motion that venue is not proper in New Jersey. This argument is also untimely because it was not raised by motion prior to the filing of Elwell's answer.

Venue is appropriate in any judicial district where a "substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). A court must examine the nature of the plaintiff's claims and the allegations underlying those claims to determine whether a substantial part of the events occurred in the forum district. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). The "events or omissions" giving rise to plaintiff's claim may sometimes occur in several different districts. *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992). It is not necessary that a majority of "events or omissions" occur in the venue where the complaint is filed – only a "substantial part" need occur there. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) ("we do not ask which district among two . . . potential forums is the 'best' venue").

A plaintiff "ordinarily enjoys the advantage or choosing [venue], within the constraints set forth by § 1391." *Nat'l Micrographics Systems, Inc. v. Canon U.S.A., Inc.*, 825 F. Supp. 671, 679 (D.N.J. 1993). "[A] plaintiff's choice of forum should rarely be disturbed, unless the balance of

the factors is strongly in favor of the defendant." *Lacey v. Cessna Aircraft Co.*, 862 F.3d 38, 43 (3d. Cir. 1988); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (noting the "strong presumption in favor of plaintiff's choice of forum"). A court must accept the allegations in the plaintiff's complaint as true when considering a motion to dismiss for improper venue. *Leone v. Cataldo*, 574 F. Supp. 2d 471, 483 (E.D. Pa. 2008). The court may also consider matters outside the pleadings such as affidavits. *See Sanford Airport Auth. v. ACI Constr. Servs., Inc.*, 2008 WL 113776, *1 (M.D. Fla. 2008).

This case is analogous to *Print Data Corp. v. Morse Fin., Inc.*, 2002 WL 1625412, at *6 (D.N.J.2002), where the court found that venue was appropriate in New Jersey on fraud claims brought by a New Jersey corporation against a California company and its principal in connection with a failed financing transaction. The court held that the New Jersey corporation detrimentally relied on the misrepresentations in New Jersey, representing a substantial part of events giving rise to the claims. *Id.* The court further noted that "Plaintiff's reliance and injury in New Jersey should have been directly foreseeable to Defendants . . . ." *Id.*

Venue is appropriate in this judicial district for the same reasons that personal jurisdiction over defendant is proper, namely, (1) the underlying transactions that apparently motivated Elwell's anger towards Sperber originated out of Elwell's business dealings with Sperber's companies in New Jersey; (2) Elwell intended to specifically cause injury to Sperber's reputation in New Jersey; (3) Elwell's effort to impersonate Sperber to give additional credibility to the false allegations required him to misappropriate Sperber's intellectual property and commit a crime in New Jersey; and (4) Elwell's actions were intentionally aimed at destroying Sperber's businesses located in New Jersey.

Accordingly, venue is appropriate in this judicial district.  Alternatively, if venue is deemed inappropriate (which it is not), then this case should be transferred to the United States District Court for the Western District of Michigan.

### D. Elwell's Argument that the Complaint Fails to Plead Compensatory Damages is Improper and Should be Disregarded.

Elwell also includes a brief argument that Plaintiff was required to specifically identify the compensatory damages she suffered in her Complaint.  This argument should have been raised in a motion under Rule 12(b)(6) and is therefore untimely.[4]  Furthermore, the argument is completely meritless.

Sperber has pled that she suffered compensatory damages as a result of Elwell's actions.  (Complaint, ¶¶ 20, 26-27, 32-33.)  A court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff in determining a Rule 12(b)(6) motion.  *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  Defendant cites no authority that Sperber must specify the form of damages she has suffered.  Accordingly, Defendant's belated Rule 12(b)(6) motion should be denied.

---

[4] A motion made on any of the grounds enumerated in Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b).

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Elwell's motion to dismiss for lack of jurisdiction. In the event the Court finds no jurisdiction or improper venue, then this case should be transferred to the United States District Court for the Western District of Michigan.

Date: May 20, 2013          By:       *s/ Stephen M. Orlofsky*
                                      **BLANK ROME LLP**
                                      A Pennsylvania LLP
                                      STEPHEN M. ORLOFSKY
                                      New Jersey Resident Partner
                                      ANDREW J. HUGHES
                                      301 Carnegie Center
                                      Princeton, NJ 08540
                                      Telephone: 609-750-7700
                                      Facsimile: 609-750-7701

                                      **KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP**
                                      DALE KINSELLA (Admitted Pro Hac)
                                      JEREMIAH REYNOLDS (Admitted Pro Hac)
                                      808 Wilshire Boulevard, Third Floor
                                      Santa Monica, CA 90401
                                      Tel: (310) 566-9800
                                      Fax: (310) 566-9884

                                      Attorneys for Plaintiff and Counterclaim-Defendant Laura Sperber