<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Laura SPERBER, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>Paul ELWELL, an individual; and DOES 1-10,<br><br>        Defendants. | Civ. No. 13-00768<br><br>OPINION |

<u>THOMPSON, U.S.D.J.</u>

      This matter has come before the Court on: (1) Plaintiff Laura Sperber's ("Plaintiff's") Motion to Dismiss Defendant Paul Elwell's ("Defendant's") Counterclaim for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. No. 9); and (2) Defendant's Motion to Dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(2), (3), and (6). (Doc. No. 12).  The Court has reached its judgment on the motions based upon the written submissions of the parties, in accordance with Federal Rule of Civil Procedure 78(b).  For the reasons included herein, the Court will deny both motions without prejudice, with permission to re-file pending completion of jurisdictional discovery.

BACKGROUND

      Plaintiff, a resident and citizen of New Jersey, is president of Legend Numismatics, a high-end coin dealership in the United States, (Doc. No. 1, Compl. at ¶¶ 4, 7), and co-owner of CAC, an independent numismatic coin grading service, (Doc. No. 16, Att. 7, Sperber Decl. at ¶ 4).  Both businesses are located in New Jersey.  (Doc. No. 16, Att. 7, Sperber Decl. at ¶¶ 3-4).

1

On September 24, 2012, an anonymous user posted about Plaintiff on the Ripoff Report website, www.ripoffreport.com, accusing her of having been indicted on charges of racketeering and money laundering. (Compl. at ¶ 7). Plaintiff denies having ever been accused or convicted of any crimes. (Compl. at ¶¶ 7, 12). Plaintiff alleges further that on October 3 and October 5, 2012, a user impersonating Plaintiff via Plaintiff's copyrighted photo replied to the above accusations with statements to the effect that Plaintiff had not "been convicted recently of any crimes" and would be "posting documents . . . showing that all criminal charges were settled via plea [bargain]." (Compl. at ¶¶ 7, 13-14). Plaintiff objects to both the allegedly defamatory content of the statements and the use of her name and identity to suggest use, endorsement, or approval of the Ripoff Report website. (Compl. at ¶ 15).

The Ripoff Report website bills itself as a website dedicated to "worldwide consumer reporting . . . by consumers, for consumers" where consumers can "file and document complaints about companies or individuals." (Compl. at ¶ 8). Ripoff Report permits anyone over the age of 14 to post free, unedited and unsubstantiated complaints ("reports"), and to select any display name desired provided it has not already been selected by another user on the site. (Compl. at ¶¶ 8-9). Once a user posts a report on the Ripoff Report website, the report remains public forever; users are not permitted to take down their own reports and reports will not be removed upon request. (Compl. at ¶ 10).

Plaintiff alleges that her own investigations have revealed Defendant to be responsible for both the original defamatory report and the subsequent replies impersonating Plaintiff. (Compl. at ¶ 7). In three counts, Plaintiff alleges (1) copyright infringement in violation of 17 U.S.C. §§ 501, *et seq.* due to the use of Plaintiff's photo in the Ripoff Report posts; (2) false advertising and false designation under 15 U.S.C. § 1125(a); and (3) libel *per se*. (Compl.)

On March 1, 2013, Defendant, proceeding *pro se*, filed an answer asserting various affirmations and denials, including a counterclaim of libel *per se*. (Doc. No. 6). Defendant concluded his answer with a demand for dismissal and sanctions based upon the allegedly frivolous nature of the lawsuit, as well as a lack of personal jurisdiction and proper venue. (Doc. No. 6). On March 26, 2013, Plaintiff filed a motion to dismiss Defendant's counterclaim, (Doc. No. 9), and on April 29, 2013, Defendant moved to dismiss Plaintiff's Complaint based upon, *inter alia*, a lack of personal jurisdiction. (Doc. No. 12). Each motion is opposed.[1] Given that a finding of no personal jurisdiction would render irrelevant all other inquiry into the two pending motions, the discussion below proceeds from that analysis.[2]

---

[1] The Court notes that Defendant has styled his reply papers as a pleading for sanctions. (Doc. No. 17, "Pleading for Sanctions against Plaintiff and/or Plaintiff's Counsel"). To the extent that Defendant's filing requests sanctions, the Court at this time sees no basis on which to make such award. Otherwise, the filing's first sentence reveals that it is also intended as a reply to Plaintiff's opposition to Defendant's motion to dismiss, and the Court will consider it as such. (*See* Doc. No. 17, "In the plaintiff[']s opposition [to] my motions. . . ").

[2] In her opposition papers, Plaintiff briefly raises the argument that Defendant's motion to dismiss pursuant to Rule 12(b) is untimely, citing the text from Rule 12(b) which states that "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). However, this rule has not been interpreted to preclude the assertion of the defense of personal jurisdiction in an Answer, should that be the defendant's initial responsive pleading. *See, e.g.*, *Neifield v. Steinberg*, 438 F.2d 423, 426-29 (3d Cir. 1971) (finding that a party may raise the defense of personal jurisdiction in an answer that also asserts defenses and compulsory counterclaims without fear of waiver); *AllGood Entertainment, Inc. v. Gridiron Video*, Civ. A. 09-2406, 2012 WL 395373, at *5 (D.N.J. Feb. 6, 2010) ("The threshold defense of lack of personal jurisdiction is waived if it is not included in a preliminary motion under Rule 12 as required by Rule 12(g), or not included in a responsive pleading or an amendment as of right to that pleading under Rule 15(a).") (quoting *Newman v. Axiom Worldwide*, Civ. No. 06-5564, 2010 WL 2265227, at *1 (D.N.J. June 2, 2010) (internal quotations omitted). Here, Defendant properly raised his defense of personal jurisdiction in his first responsive pleading, his Answer. Given that Plaintiff is proceeding *pro se*, permitting the Court to extend greater leniency where circumstances allow, *AllGood*, 2012 WL 395373 at *5 (citing *Huertas v. U.S. Dep't of Educ.*, Civ. No. 08-3959, 2010 WL 2771767, at *5 (D.N.J. July 12, 2010)), the Court does not find that the other provisions of the pleading, principally in the form of a compulsory counterclaim, serve to waive that defense.

Discussion

It is well settled that a plaintiff bears the burden of establishing personal jurisdiction once it is challenged by a defendant. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992). Plaintiff must respond with more than mere allegations; Plaintiff must respond with actual proofs. *Patterson v. F.B.I.,* 893 F.2d 595, 604 (3d Cir. 1990).

Generally, "[a] district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the [] state" where it sits. *Metcalf v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). In New Jersey, courts are statutorily authorized under New Jersey Court Rule 4:4-4 to exercise personal jurisdiction over nonresident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). To comport with the requirements of due process, a plaintiff must show that (1) the nonresident defendant has "certain minimum contacts with [the forum state]" and (2) that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

When analyzing whether or not a defendant has sufficient minimum contacts with a forum state, jurisdiction may be categorized as either general or specific. General jurisdiction arises where a defendant has continuous and systematic contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984). In this instance, Plaintiff makes no showing that Defendant has sufficient minimum contacts with the forum state so as to support a finding of general jurisdiction. Thus, the inquiry turns to whether or not there are sufficient minimum contacts to support the exercise of *specific* jurisdiction.

Ordinarily, the exercise of specific jurisdiction requires there be some act or acts by which a defendant "purposefully avails itself of the privilege of conducting activities in the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), such that the defendant should "reasonably anticipate being haled into court" there, *see World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) ("Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state."). The alleged injury must arise from, or relate to, those activities. *Gen. Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir. 2001) (citing *Burger King Corp. v. Rudzewiczi*, 471 U.S. 462, 472 (1985)).

A second, slightly different mode of analysis relevant to the present claims of intentional and business torts is the so-called "effects" test, derived from *Calder v. Jones*, 465 U.S. 783 (1984). *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259-60 (3d Cir. 1998). In *Calder*, California resident and entertainer Shirley Jones brought suit in California against two National Enquirer employees who were allegedly responsible for the publication of a defamatory article involving Jones. 465 U.S. at 784-85. The defendants were residents of Florida, and only one had contacts with California via previous phone calls for article research. *Id.* The Supreme Court found personal jurisdiction over the Florida residents to be proper in California where the National Enquirer, despite national readership and distribution, enjoyed its largest circulation in California. *Id.* at 789-90. The Court found that California was "the focal point both of the story and of the harm suffered," and that jurisdiction was proper based upon the "effects" of their conduct. *Id.* at 261.

The Third Circuit has since interpreted *Calder* to permit the exercise of personal jurisdiction over a non-resident defendant where:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten v. Godwin,* 499 F.3d 290, 297 (3d Cir. 2007) (quoting *IMO Indus.*, 155 F.3d at 265-66).

Under both variations of the personal jurisdiction inquiry, the Third Circuit has emphasized the *intentionality* of the non-resident defendant in targeting the forum. *See, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 452, 455 n. 6 (3d Cir. 2003) (citing favorably to the finding in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) that exercise of personal jurisdiction is proper "where the commercial web site's interactivity reflected specifically intended interaction with residents of the forum state" and noting in a footnote that under *Calder*, the critical inquiry for "express aim" is Defendant's intentionality with respect to the forum).

Turning, then, to the submissions of the parties, "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys*, 318 F.3d 446, 457 (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).  Here, the Court agrees with Plaintiff that the first two elements of the effects test are easily met.  The torts alleged are intentional, and Plaintiff, a resident of and business owner in New Jersey, felt the brunt of the harm *in* New Jersey.

Moving to the more difficult task of demonstrating that Defendant intentionally targeted the forum, Plaintiff provides evidence that Defendant voluntarily transacted twice with Legend, Plaintiff's business in New Jersey, to purchase rare coins: once in August 2011 and again in September 2012.  The latter transaction was canceled due to failure to receive payment, (Doc.

6

No. 16, Att. 9, Sperber Decl., Ex. B), and, shortly thereafter, the first posting on Ripoff Report appeared. Plaintiff theorizes that the canceled transaction was the impetus for Defendant's ensuing conduct, and cites to *Stevens v. Meaut*, 264 F. Supp. 2d 299 (E.D. Pa. 2003), in which the non-resident defendant's slander of a yacht title appeared to be related to the underlying transactions between the defendant and the owners, as support for the proposition that such a connection could justify the exercise of personal jurisdiction in this case.

      Plaintiff further argues that Defendant (1) knew Plaintiff was a New Jersey resident based upon prior dealings with Legend; (2) meant to target both Plaintiff and her companies in New Jersey, as shown by specific mention of Legend and CAC in the Ripoff Report postings; (3) implicated to reasonable readers that Plaintiff was both investigated and indicted in New Jersey by accusing her of the forum-oriented crimes of racketeering and money laundering; (4) violated New Jersey property rights when misappropriating Plaintiff's name and likeness for impersonation purposes; and (5) likely targeted primarily New Jersey individuals when sending emails to Plaintiff's peers and customers in the coin-collecting business that contained the link to the Ripoff Report. Although Plaintiff does not have proof as to this last assertion, Plaintiff argues that Defendant's failure to respond to initial discovery requests should spur the Court to read the facts in Plaintiff's favor.

      Upon review of Plaintiff's contentions, however, the Court finds that the majority of the evidence does *not* support a finding that Defendant intentionally targeted the present forum. Although the allegedly tortious postings mention Plaintiff's New Jersey companies, there is no actual mention of New Jersey. The Ripoff Report website, where the tortious comments were made, appears to have a national audience, with no specific targeting or soliciting of New Jersey residents. While Defendant received invoices from his coin transactions with Legend containing

a New Jersey address printed clearly at the top, the Court notes that the Legend website seems to target a nationwide customer base.  The Court is also unconvinced that the reasonable reader would necessarily think of New Jersey when reading that Plaintiff may have been indicted on charges of money laundering and racketeering.  Finally, given the Third Circuit's narrow interpretation of personal jurisdiction, even in the instance of direct contracting, *see, e.g.*, *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (noting that "[t]he fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident"), the Court does not believe, and has not encountered case law to the effect that, the previous transactions with Plaintiff and Defendant are sufficient evidence to support the intentional targeting of the forum state.[3]

However, there remains one item in dispute that, if resolved in favor of Plaintiff, would place Defendant's other alleged actions in context and/or independently demonstrate whether or not Defendant did, in actuality, expressly aim his conduct at New Jersey.  Plaintiff contends that the emails allegedly sent by Defendant containing the link to the tortious postings likely targeted New Jersey residents.  Plaintiff also contends that Defendant has been unwilling to answer discovery requests as concerns this matter.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently alleged the possibility of adequate minimum contacts in connection with this tort so as to support further jurisdictional discovery with regards to the relevant emails.  *See, e.g.*, *Ajax Enterprises,*

---

[3] Along these lines, the Court notes that this case is distinguishable from the aforementioned *Stevens*, *supra* p. 9, on which Plaintiff heavily relies.  In *Stevens*, the defendant had had an ongoing relationship over the course of years with the plaintiffs in Philadelphia, and numerous communications and financial transactions had been exchanged there such that Defendant could reasonably be said to have known Plaintiffs would feel the brunt of the harm in Pennsylvania and be affected there.  *See*, *generally*, *Stevens*, 264 F. Supp. 2d 299.  Here, such an extensive, ongoing relationship between Defendant and Plaintiff in New Jersey is lacking, save for two isolated financial transactions.

*Inc., et al. v. The Szymoniak Law Firm, et al.*, Civ. A. 05-5903 (NLH) (D.N.J. Feb. 22, 2007) (citing *Toys*, 318 F.3d at 456) (finding that plaintiff had "alleged 'with reasonable particularity' the possibility that sufficient non-Internet minimum contacts exist between [D]efendant[] and New Jersey," to support a finding of minimum contacts and permit jurisdictional discovery); *Toys*, 318 F.3d at 457 (permitting limited, detailed discovery concerning the plaintiff's allegations that the defendants had aimed the disputed activity towards the United States). Such jurisdictional discovery is especially appropriate where New Jersey has a decided interest in protecting its business owners, and where Plaintiff's right to litigate in the forum of her choice barring exceptional circumstances should be prioritized. As this matter is related solely to the question of personal jurisdiction, participation in this discovery would not waive Defendant's right to assert a personal jurisdiction defense at its conclusion.

## CONCLUSION

In light of the foregoing analysis, the Court will deny Defendant's motion to dismiss without prejudice until further jurisdictional discovery has occurred. As the question of personal jurisdiction will determine whether or not the Court need hear the other grounds for dismissal, the Court will likewise deny without prejudice Plaintiff's motion to dismiss Defendant's counterclaim. Both parties have permission to re-file their motions upon completion of jurisdictional discovery, in the event they remain relevant. An appropriate order accompanies this Opinion.

/s/ANNE E. THOMPSON  
ANNE E. THOMPSON, U.S.D.J.

Dated:    June 10, 2013